Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept. (2024 NY Slip Op 01143)

Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept.

2024 NY Slip Op 01143

Decided on February 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 29, 2024

CV-23-0383
[*1]In the Matter of Coney Island Preparatory Public Charter School et al., Appellants,
v
New York State Education Department et al., Respondents.

Calendar Date:January 18, 2024

Before:Egan Jr., J.P., Clark, Lynch, McShan and Mackey, JJ.

Arnold & Porter Kaye Scholer LLP, New York City (Kent A. Yalowitz of counsel), for appellants.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for New York State Education Department and another, respondents.
Sylvia O. Hinds-Radix, Corporation Counsel, New York City (Jesse A. Townsend of counsel), for City of New York and another, respondents.

Mackey, J.
Appeal from a judgment of the Supreme Court (James P. Gilpatric, J.), entered February 1, 2023 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, among other things, granted respondents' motions to dismiss the petition/complaint.
Education Law § 2856 governs the financing of charter schools and requires school districts to pay a statutorily determined per-student amount to any charter school in which a student who resides in that district is enrolled — a payment referred to as the charter school basic tuition (hereinafter tuition) (see Education Law §§ 2856 [1] [a]; 3602 [1] [f]). Petitioners collectively operate 66 charter schools within New York City and are funded largely by tuition paid to them by respondents New York City Department of Education and the City of New York (hereinafter collectively the City). The amount of tuition to be paid per student is calculated annually by respondent New York State Education Department (hereinafter the Department) by applying an adjustment factor to the tuition rate from the prior year, according to a statutory formula. As relevant here, the Department bases its calculation of the adjustment factor on information provided to it by the City concerning, broadly speaking, its "approved operating expense[s]" associated with running public schools within the City (Education Law §§ 2856 [1] [a] [viii]; 3602 [1] [t]). Once the Department calculates the tuition for a particular school year, the City is then responsible for paying it in "six substantially equal installments," beginning the first business day of July and every two months thereafter (Education Law § 2856 [1] [b]; see 8 NYCRR 119.1 [c] [1]).
On May 15, 2021, the Department calculated the tuition to be paid to petitioners by the City, for the upcoming 2021-2022 school year, at $16,844 per pupil.[FN1] It published that information on its website on May 21, 2021. More than a year later, on August 18, 2022, petitioners filed this hybrid action/proceeding (hereinafter proceeding), claiming that the Department had erred in its calculation. The gravamen of the petition/complaint (hereinafter the petition) is that, based on revised operating expense data submitted by the City to the Department in June of 2021, the Department should have recalculated the tuition for the 2021-2022 school year at $16,877 per student.[FN2] Petitioners seek a writ of mandamus compelling the Department to redo its calculation. Petitioners also demand damages from the City for the difference between the tuition rate calculated by the Department and what petitioners claim it should be. The Department opposed, asserting that it properly calculated the tuition rate. It explained that its long-standing practice has been to do that calculation based on the information it has as of May 15 each year. According to the Department, it does not recalculate the rate based on subsequently received information, as was submitted by the City [*2]here, to protect both school districts and charter schools from mid-year funding fluctuations.
Respondents separately moved to dismiss the petition as untimely, and, finding that the proceeding was time-barred by the applicable four-month statute of limitations, Supreme Court granted the motion. The court also determined that it had no authority or discretion to grant petitioners leave to serve a late notice of claim against the City, as the statute of limitations had expired. Petitioners appeal.
We affirm. A CPLR article 78 proceeding that seeks review of an administrative determination "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner[s]" (CPLR 217 [1]; see Matter of De Milio v Borghard, 55 NY2d 216, 219-220 [1982]). "A determination becomes final and binding when it definitively impacts and aggrieves the party seeking judicial review" (Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev. Disabilities, 200 AD3d 1273, 1274 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Edmead v McGuire, 67 NY2d 714, 716 [1986]; see also Matter of Village of Westbury v Department of Transp. of State of N.Y., 75 NY2d 62, 72 [1989]). "The Court of Appeals has defined 'final and binding' in terms of completeness and exhaustion of administrative remedies; first, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be significantly ameliorated by further administrative action or by steps available to the complaining party" (Matter of Krakauer v New York State Educ. Dept., 174 AD3d 1090, 1091 [3d Dept 2019] [internal quotation marks, brackets, ellipsis and citations omitted]).
Here, we agree with Supreme Court that the proceeding is time-barred. There is no dispute that the governing statute of limitations is four months.[FN3] Rather, the issue is when that period began to run. In our view, petitioners' time to file a proceeding to challenge the Department's calculation expired four months after the Department published the 2021-2022 tuition rate online (see Matter of Hogg-Chapman v New York State Teachers' Retirement Sys., 83 AD3d 1261, 1262 [3d Dept 2011]; Matter of Surton Constr. Contr. Corp. v New York City School Constr. Auth., 81 AD3d 654, 655 [2d Dept 2011], lv denied 18 NY3d 802 [2011]). By petitioners' own admission, that determination aggrieved them. Certainly, petitioners had the opportunity to file a petition when they began to receive what they thought were underpayments.[FN4] Although petitioners characterize their claim as one for mandamus to compel and argue that their time to commence this proceeding, therefore, did not begin to run until their demand to act was refused, their own arguments contradict that assertion. Petitioners do not allege that the Department failed to make a tuition calculation, as required by statute, but that [*3]it erred in its calculation by using nonfinal expense data. Such a complaint sounds in mandamus to review, not to compel (see Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev. Disabilities, 200 AD3d at 1274). Petitioners' subsequent attempt to have the Department reconsider its determination does not extend or toll the statute of limitations (see Matter of Thorne v LaClair, 166 AD3d 1181, 1181-1182 [3d Dept 2018]; Matter of Scott v City of Albany, 1 AD3d 738, 739 [3d Dept 2003]; Matter of Walsh v Superintendent of Highways of Town of Poestenkill, 135 AD2d 968, 969 [3d Dept 1987], lv denied 72 NY2d 808 [1988]). "Allowing this proceeding to be couched in terms of mandamus would allow any party to begin anew the running of the statute of limitations in a certiorari matter by demanding recision of the original determination the party wishes to challenge. We cannot countenance this attempt to create an end run around the statute of limitations"(Matter of Letourneau v Town of Berne, 56 AD3d 880, 881 [3d Dept 2008]). Accordingly, Supreme Court properly granted respondents' motions to dismiss. The court also correctly determined that it had no authority to grant petitioners leave to serve a late notice of claim, since it was sought after the statute of limitations had expired (see Education Law § 3813 [2-a]; Matter of Stevens v Board of Educ. of McGraw Cent. School Dist., 261 AD2d 698, 689 [3d Dept 1999], lv denied 93 NY2d 816 [1999]; see also Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist., 9 AD3d 696, 698 [3d Dept 2004], lv dismissed 3 NY3d 767 [2004]).
Egan Jr., J.P., Clark, Lynch and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: The 2021-2022 school year ran from July 1, 2021 to June 30, 2022.

Footnote 2: The revised data was required because the Department in November 2020 advised school districts that transportation expenses reported during the COVID-19 pandemic should not include expenses for keeping employees on standby, maintaining infrastructure, or using school busses to deliver meals and homework to students but, rather, should include only "actual costs incurred in physically transporting students to/from school." That was modified, however, by an April 2021 amendment to Education Law § 3622-a, which retroactively allowed the previously disallowed expenses if they were incurred "during the time period of school building closures ordered pursuant to executive order 202 of 2020" (L 2021, ch 56, § 20).

Footnote 3: Although petitioners' pleadings include a declaratory judgment cause of action, which would generally be governed by a six-year statute of limitations, because that "claim[ ] could have been properly addressed in the context of a CPLR article 78 proceeding, a four-month statute of limitations [applies]" (Doe v State Univ. of N.Y., Binghamton Univ., 201 AD3d 1075, 1076 [3d Dept 2022] [internal quotation marks and citation omitted]; see Kreamer v Town of Oxford, 91 AD3d 1157, 1158 [3d Dept 2012]).

Footnote 4: The record reflects that the City made the required payments in July 2021, September 2021, November 2021, January 2022, March 2022 and May 2022.